IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

PAULA S. DONELLY,           §
                            §
        Plaintiff,          §
                            §
v.                          §     CIVIL ACTION NO. G-13-0165
                            §
CAROLYN W. COLVIN,          §
ACTING COMMISSIONER OF THE  §
SOCIAL SECURITY ADMINISTRATION, §
                            §
        Defendant.          §

## MEMORANDUM OPINION

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docs. 7) and Defendant's Motion for Summary Judgment (Doc. 9).  The court has considered the motions, the administrative record, and the applicable law.  For the reasons set forth below, the court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

### I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding Plaintiff's claims for disability insurance benefits and supplemental security income under Title II and Title XVI, respectively, of the Social Security Act ("the Act").

### A.  Medical History

---

[1]       The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docs. 12, 13.

On August 9, 2010, Plaintiff was examined by Donald MacDonald, M.D., ("Dr. MacDonald"), her treating physician since at least 2009.[2] Plaintiff reported pain in her left heel and was diagnosed with plantar fasciitis and a calcaneal spur.[3] Plaintiff again visited Dr. MacDonald on November 23, 2010, for prescription refills treating diabetes, hypertension, and high cholesterol.[4] Plaintiff stated that she was suffering from pain in her left foot.[5] On December 29, 2010, Plaintiff met with Dr. MacDonald and complained of foot pain and a twisted left ankle.[6]  In his treatment plan, Dr. MacDonald recommended increased arch support.[7]

On February 27, 2011, Plaintiff visited the Clear Lake Emergency Room reporting foot pain and ankle swelling; she was given an x-ray by Larry Schock, M.D., ("Dr. Schock").[8] Dr. Schock reported that there was evidence of "mild degenerative change," moderately prominent plantar calcaneal enthesophytes (heel spurs), and mild soft-tissue swelling.[9] Dr. Schock noted that there was no evidence of soft tissue gas, erosive change, or periosteal

---

[2]     See Tr. of the Admin. Proceedings ("Tr.") 219, 263.

[3]     See Tr. 263.

[4]     See id.

[5]     See Tr. 262.

[6]     See Tr. 260.

[7]     See id.

[8]     See Tr. 258-59.

[9]     See Tr. 258.

reaction.[10]

On April 8, 2011, Plaintiff again visited Dr. MacDonald, reporting continued pain in her foot.[11]  Dr. MacDonald also refilled Plaintiff's maintenance medications for diabetes, high cholesterol, and hypertension.[12]

On July 28, 2011, Plaintiff again visited Dr. MacDonald to review the results of lab work.[13]  Dr. MacDonald again refilled Plaintiff's prescriptions.[14]  Dr. MacDonald did not record any notes regarding Plaintiff's foot pain.[15]

On November 18, 2011, Plaintiff returned to Dr. MacDonald.[16] Plaintiff indicated to Dr. MacDonald that she could not afford to pay for her prescriptions.[17]  Dr. MacDonald renewed Plaintiff's prescriptions, although there is no indication in the record that the prescriptions were filled.[18]

B.  **Application to Social Security Administration**

Plaintiff protectively applied for disability insurance

---

[10]     See id.

[11]     See Tr. 257.

[12]     See id.

[13]     See Tr. 256.

[14]     See id.

[15]     See id.

[16]     See Tr. 255.

[17]     See id.

[18]     See id.

benefits and supplemental security income on March 10, 2011, claiming an inability to work due to diabetes, arthritis, foot neuropathy, and dyslexia.[19]  In her application, Plaintiff identified March 4, 2011, as the alleged onset date of disability.[20] Prior to that date, Plaintiff worked as a cafeteria worker in a nursing home.[21]

In a Function Report, completed on Plaintiff's behalf by her sister-in-law on April 2, 2011, Plaintiff described her daily activities.[22]  Plaintiff disclosed that her daily schedule involved getting dressed, watching television, preparing lunch and dinner, and taking a bath.[23]  Plaintiff stated that she was unable to clean her house but that she did laundry weekly.[24]  Plaintiff estimated that she went outside once a day and shopped weekly.[25]  She stated that she was able to drive.[26]  Plaintiff indicated that she struggled to pay her bills, use a checkbook, or count change.[27]  She noted that she could use money orders and manage a savings account,

---

[19]     See Tr. 123-30.

[20]     See Tr. 153.

[21]     See Tr. 157.

[22]     See Tr. 161-68.

[23]     See Tr. 162.

[24]     See Tr. 163.

[25]     See Tr. 164.

[26]     See id.

[27]     See id.

4

although she did not have a savings account at the time.[28]

Plaintiff reported that she had no hobbies but did spend time with others.[29]  Plaintiff stated that her disability affected her ability to lift, squat, bend, stand, walk, kneel, climb stairs, complete tasks, and concentrate.[30]  She reported that she could walk for "a few minutes" but would need to rest for forty-five minutes afterwards.[31]  Plaintiff indicated that her dyslexia made it difficult to follow written instructions and that pain interfered with concentration.[32]  Plaintiff stated that she did not handle stress or changes in routine very well.[33]  Plaintiff noted that she wore glasses and a brace at all times and used crutches when she needed to walk, although only the glasses were prescribed to her by a doctor.[34]  Plaintiff reported that she was prescribed several medications: Metformin HCL, Glyburide, Lovastatin, Lisinopril, and Diclofenac.[35]

On May 26, 2011, at the request of the Texas Disability Determination Services ("TDDS"), Plaintiff was examined by James

---

[28]    See Tr. 164, 168.

[29]    See Tr. 165.

[30]    See Tr. 166.

[31]    See id.

[32]    See id.

[33]    See Tr. 167.

[34]    See id.

[35]    See Tr. 168.

Tran, M.D., ("Dr. Tran").[36]   Plaintiff complained of left ankle pain, difficulty walking more than two blocks, lower extremity neuropathy due to diabetes, difficulty learning new tasks, and forgetfulness.[37] Dr. Tran noted that Plaintiff did not complain of any chest pain or shortness of breath.[38] Dr. Tran observed that Plaintiff was ambulatory with a limp on her left side and that Plaintiff was unable to put full weight on her left ankle.[39] Dr. Tran observed that there was some swelling and tenderness associated with Plaintiff's ankle that limited Plaintiff's ability to tiptoe, walk on her heels, or squat.[40]  Dr. Tran found that Plaintiff's ankle did not have gross tissue damage or bone destruction.[41] Dr. Tran observed that, while Plaintiff complained of some numbness in her lower extremeties, she maintained normal strength and tendon reflexes in both legs.[42]

On July 25, 2011, Kelvin Samaratunga, M.D., ("Dr. Samaratunga"), completed a Physical Residual Function Capacity ("RFC") Assessment.[43]  In his assessment, Dr. Samaratunga opined

---

[36]     See Tr. 235.

[37]     See id.

[38]     See id.

[39]     See id.

[40]     See id.

[41]     See id.

[42]     See id.

[43]     See Tr. 238-45.

that Plaintiff could occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand for about six hours of a workday, sit for about six hours of a workday, and push or pull without limit.[44] Dr. Samaratunga noted that Plaintiff could only occasionally climb stairs or balance and could not climb ropes, ladders, or scaffolds.[45] Dr. Samaratunga reported that Plaintiff complained of foot pain and neuropathy and noted that Plaintiff's use of crutches was not supported by objective findings.[46] Dr. Samaratunga concluded that Plaintiff's claims were partially supported.[47]

On September 1, 2011, Shabnam Rehman, M.D., ("Dr. Rehman"), completed a second Physical RFC Assessment.[48] Dr. Rehman largely agreed with the findings of Dr. Samaratunga, but found that Plaintiff could stand and walk for only three hours in a workday.[49] Dr. Rehman observed that Plaintiff could not squat, tiptoe, or walk on her heels but that Plaintiff's ankle could bear her weight.[50] He indicated that Plaintiff's limp had improved and noted that her

---

[44]   See Tr. 239.

[45]   See Tr. 240.

[46]   See Tr. 243.

[47]   See Tr. 245.

[48]   See Tr. 246-53.

[49]   See Tr. 247.

[50]   See Tr. 253.

crutches were not prescribed and not used at the appointment.[51]  Dr. Rehman opined that Plaintiff's claims were partially supported.[52]

On March 7, 2012, Dr. MacDonald completed a multiple impairment questionnaire on Plaintiff's behalf.[53]  Dr. MacDonald indicated that he had treated Plaintiff since August 2007 on an "at least twice a month" schedule.[54]  Dr. MacDonald noted that Plaintiff suffered from diabetes, high cholesterol, calcaneal spurs, plantar fasciitis, and septic dermatitis.[55]  Dr. MacDonald indicated that Plaintiff suffered from pain in her feet and her arms, with a focus on her heels.[56]  He rated Plaintiff's pain and fatigue levels at nine out of ten and stated that he could not reduce the pain without side effects.[57]  Dr. MacDonald opined that Plaintiff could stand for only one hour and sit for two hours in a workday and recommended that Plaintiff not sit or stand continuously in a work setting.[58]  Dr. MacDonald reported that Plaintiff's condition would prevent her from keeping her neck in a constant position and

---

[51]     See id.

[52]     See id.

[53]     See Tr. 278-85.

[54]     See Tr. 278.

[55]     See id.

[56]     See id.

[57]     See Tr. 280.

[58]     See id.

predicted that her symptoms would worsen in a work environment.[59]
Dr. MacDonald stated that Plaintiff was in constant pain with an
ongoing duration expected to last at least twelve months.[60]   Dr.
MacDonald further indicated that Plaintiff would need to take
unscheduled breaks every thirty minutes.   Dr. MacDonald responded
to the question "are there any other limitations that would affect
your patient's ability to work at a regular job on a sustained
basis?" by writing in "all of the above."[61]   Dr. MacDonald reported
that Plaintiff suffered from these limitations as of August 15,
2007.[62]

Defendant denied Plaintiff's application at the initial and
reconsideration levels.[63]   Plaintiff requested a hearing before an
administrative law judge ("ALJ") of the Social Security
Administration.[64]   The ALJ granted Plaintiff's request and conducted
a hearing on March 8, 2012.[65]

C.   **Hearing**

Plaintiff and a vocational expert ("VE") testified at the

---

[59]   See Tr. 282.

[60]   See Tr. 283.

[61]   See Tr. 284.   This question listed fifteen additional limitations,
including "need to avoid wetness," "need to avoid dust," and "psychological
limitations," limitations not addressed elsewhere in the record.   See id.

[62]   See id.

[63]   See Tr. 60-71, 73-78.

[64]   See Tr. 79-80.

[65]   See Tr. 38-59, 93-116.

hearing.[66]  Plaintiff was represented by an attorney.[67]

Plaintiff testified that she was born on January 11, 1965, and was forty-seven years old at the time of the hearing.[68]  Plaintiff testified that she was single, lived alone, and last worked on March 4, 2011.[69]  She stated that, although she graduated from high school, she had limited ability to read and write.[70]

Plaintiff's attorney led an examination of Plaintiff, who testified that she used crutches "all the time."[71]  Plaintiff testified that she used crutches around the house, although she stated that she could get up from the couch and walk short distances without them.[72]  She stated that, while the crutches she took to the hearing were not prescribed, she had previously received a prescription for them.[73]  Plaintiff testified that she could walk without crutches only on level surfaces.[74]  She further testified that when she went shopping, she was able to use the

---

[66]    See Tr. 38-59.

[67]    See Tr. 38.

[68]    See Tr. 44.

[69]    See Tr. 45, 47.

[70]    See Tr. 46.

[71]    See Tr. 50.

[72]    See id.

[73]    See Tr. 51.

[74]    See id.

grocery cart for balance.[75] Plaintiff stated that she tried to find a job where she did not have to stand but was unsuccessful.[76] Plaintiff indicated that she believed she could work at a job where she did not have to stand and walk more than two hours a day or lift anything heavier than ten pounds.[77]

The ALJ then questioned the VE regarding Plaintiff's past employment.[78]   The VE concluded that Plaintiff's past job as a dining room attendant was an unskilled position performed at the light exertion level.[79]

The VE testified that there were jobs available for individuals restricted to sedentary, unskilled work with limited reading, including surveillance system monitor, sorter, order clerk, or document preparer.[80]   The VE stated that there were no jobs at the sedentary, unskilled level for individuals limited by severe pain that caused loss of concentration and attention, or difficulties meeting attendance standards or performing regular work.[81]

## D.  **Commissioner's Decision**

---

[75]     See id.

[76]     See Tr. 51-52.

[77]     See Tr. 52.

[78]     See Tr. 53.

[79]     See Tr. 54.

[80]     See Tr. 54, 58.

[81]     See Tr. 54.

On April 10, 2012, the ALJ issued an unfavorable decision.[82]
The ALJ found that Plaintiff had not engaged in substantial gainful
activity since March 4, 2011, and that she had multiple impairments
that were severe, although Plaintiff's impairment due to dyslexia
was found to be mild.[83]  According to the ALJ, Plaintiff's severe
impairments, individually or collectively, did not meet or
medically equal any of the listings of the regulations[84] ("The
Listings").[85]

The ALJ found that Plaintiff's ankle condition did not meet
Listing 1.02 because Plaintiff did not have chronic joint pain and
stiffness with signs of limitation of motion or abnormal motion of
the joints.[86]  The ALJ noted that Plaintiff did not offer evidence
of joint space narrowing, bony destruction, or ankylosis of the
joints.  The ALJ also found that there was not an inability to
ambulate effectively, as defined by Listing 1.00 Paragraph B.[87]

The ALJ found that diabetes alone could not meet a Listing,
but considered it in the context of Plaintiff's claim of peripheral
neuropathy.[88]  The ALJ determined that Plaintiff did not have

---

[82]   See Tr. 19-36.

[83]   See Tr. 24, 25.

[84]   20 C.F.R. Pt. 404, Subpt. P, App. 1.

[85]   See Tr. 25.

[86]   See id.

[87]   See id.

[88]   See Tr. 26.

significant and persistent disorganization of motor function in two extremities as required to meet Listing 11.14 Paragraph B.[89]

The ALJ similarly observed that Plaintiff's obesity and arthritis did not meet or medically equal a Listing.[90]   The ALJ found that Plaintiff did not display the level of cardiovascular degradation necessary to meet a Listing under Section 4.00 and that Plaintiff's obesity did not prevent her from ambulating effectively under Listing 1.02.[91]

The ALJ determined Plaintiff was capable of performing work at the sedentary level with the following limitations: (1) never climbing ropes, ladders, and scaffolds; and (2) not requiring extensive reading.[92]   The ALJ made her determination based on Plaintiff's testimony and function report, the examination by Dr. Tran, the opinions of Dr. Samaratunga and Dr. Rehman, and the questionnaire and notes completed by Dr. MacDonald.[93]

The ALJ found that, although Plaintiff testified that her activities were fairly limited, her statements regarding the severity of her symptoms and their effect on her work-related

---

[89]   See id.

[90]   See id.

[91]   See id.

[92]   See id.

[93]   See Tr. 27-28.

abilities were not entirely credible.[94]   The ALJ noted that Plaintiff did not obtain a prescription for crutches until days after the hearing.[95]   The ALJ noted that, in Plaintiff's function report, she stated that she was able to shop, cook, and drive.[96] Plaintiff also performed household chores and independently provided for her personal care.[97]   The ALJ also found that Plaintiff's application and subsequent receipt of unemployment benefits reflected poorly on her credibility because, in order to receive unemployment, Plaintiff certified that she was ready, willing, and able to work.[98]

The ALJ considered the evidence collected by Dr. Tran and the opinions of Dr. Samaratunga and Dr. Rehman and found that Plaintiff was more limited than the doctors suggested.[99]   Both Dr. Samaratunga and Dr. Rehman opined that Plaintiff was able to work with light physical exertion; however, the ALJ found that Plaintiff was limited to work at the sedentary level.[100]

The ALJ also considered the questionnaire produced by Dr. MacDonald and found that Dr. MacDonald's conclusions regarding the

---

[94]   See Tr. 27.

[95]   See id.

[96]   See id.

[97]   See id.

[98]   See id.

[99]   See Tr. 27-28.

[100]   See Tr. 28.

nature and severity of Plaintiff's impairments were not supported by the record.[101]   The ALJ based this determination on Dr. MacDonald's records, including treatment notes and x-rays, that reflected only minor degenerative changes and calcaneal enthesophytes.[102]   Based on the questionnaire's inconsistencies, including inconsistencies regarding the frequency of treatment and the date of onset, the ALJ considered it likely that the questionnaire was based on Plaintiff's self-reports rather than Dr. MacDonald's conclusions.[103]   The ALJ noted that Dr. MacDonald signed the questionnaire, however, because of the handwriting and other discrepancies, questioned whether Dr. MacDonald personally completed the form.[104]   The ALJ found that Dr. MacDonald's purported opinions recorded on check-box or form reports, without explanation or supporting rationale, may be accorded little or no weight.[105]

The ALJ concluded that Plaintiff's function report was well-supported by the medical evidence.[106]   The ALJ gave deference to Plaintiff's testimony regarding her restrictions, but found that, while she was limited, she was not precluded from all gainful

---

[101]   See Tr. 28-29.

[102]   See Tr. 29-30.

[103]   See Tr. 30.

[104]   See id.

[105]   See id.

[106]   See id.

15

activity.[107]

The ALJ found that Plaintiff was unable to perform any past relevant work, as her previous employment required light exertion.[108]   The ALJ observed that, despite Plaintiff's restrictions, there were jobs available in significant numbers that she could perform.[109]   Relying on the testimony of the VE, the ALJ found that Plaintiff could work as a surveillance system monitor, sorter, or order clerk.[110]   The ALJ therefore found that Plaintiff was not disabled from March 4, 2011, through the date of the ALJ's decision.[111]

Plaintiff appealed the ALJ's decision, and, on March 19, 2013, the Appeals Council denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[112]   After receiving the Appeals Council's denial, Plaintiff timely sought judicial review of the decision by this court.[113]

## II.  Standard of Review and Applicable Law

---

[107]     See id.

[108]     See id.

[109]     See Tr. 31.

[110]     See id.

[111]     See Tr. 32.

[112]     See Tr. 1-4.

[113]     See Tr. 2, 4; Doc. 1, Pl.'s Compl.

16

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) the ALJ applied proper legal standards in evaluating the record; and 2) substantial evidence in the record supports the decision.  <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002).

A.  <u>**Legal Standard**</u>

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act.  <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); <u>see also</u> <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994).  The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3); <u>see also</u> 42 U.S.C. § 423(d)(5)(A); <u>Jones v. Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no

matter what the medical findings are; (2) a claimant will
not be found to be disabled unless [s]he has a "severe
impairment;" (3) a claimant whose impairment meets or is
equivalent to [a Listing] will be considered disabled
without the need to consider vocational factors; (4) a
claimant who is capable of performing work that [s]he has
done in the past must be found "not disabled;" and (5) if
the claimant is unable to perform h[er] previous work as
a result of h[er] impairment, then factors such as h[er]
age, education, past work experience, and [RFC] must be
considered to determine whether [s]he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20

C.F.R. §§ 404.1520, 416.920.  The analysis stops at any point in

the process upon a finding that the claimant is disabled or not

disabled.  Greenspan, 38 F.3d at 236.

**B.   Substantial Evidence**

The widely accepted definition of "substantial evidence" is

"that quantum of relevant evidence that a reasonable mind might

accept as adequate to support a conclusion." Carey v. Apfel, 230

F.3d 131, 135 (5th Cir. 2000).  It is "something more than a

scintilla but less than a preponderance." Id.  The Commissioner

has the responsibility of deciding any conflict in the evidence.

Id.  If the findings of fact contained in the Commissioner's

decision are supported by substantial record evidence, they are

conclusive, and this court must affirm.   42 U.S.C. § 405(g);

Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings

exist to support the Commissioner's decision should the court

overturn it.  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir.

1988).   In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.   <u>Brown v. Apfel</u>, 192 F.3d 492, 496 (5th Cir. 1999).   In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless.   <u>Id.</u>

### III.  Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.   Plaintiff asserts that the ALJ's decision contains two errors: 1) the ALJ erred in failing to give Dr. MacDonald's opinions controlling weight; and 2) the ALJ erred in questioning Plaintiff's credibility.   Defendant disagrees with Plaintiff on both of the asserted errors, contending that the ALJ's decision is legally sound and is supported by substantial evidence.

**A.   <u>Failure to Give Controlling Weight to Treating Physician's Opinion</u>**

Plaintiff contends that the medical opinions of Dr. MacDonald, Plaintiff's treating physician, were entitled to controlling weight in the ALJ's determination.   The ALJ's failure to afford Dr. MacDonald's opinions such deference without good reason, Plaintiff argues, constitutes an improper application of legal standards under the Act.

"A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000)(internal quotations omitted); see SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996) (explaining when medical opinions by treating physicians are entitled to controlling weight). However, the ALJ ultimately may give less weight to the medical opinion of any physician when the statements are conclusory, unsupported, or otherwise incredible. Greenspan, 38 F.3d at 237. When deciding to do so, the ALJ must indicate the specific reasons for discounting the treating source's medical opinion. See SSR 96-2p.

Here, the ALJ thoroughly summarized the medical evidence provided by Dr. MacDonald.[114]   In recounting her reasons for rejecting Dr. MacDonald's questionnaire as controlling, the ALJ stated that Dr. MacDonald's opinions were "not well supported by the record and [were] inconsistent with the other substantial evidence of the record including treatment notes."[115] Specifically, the ALJ cited Dr. MacDonald's treatment records that documented "mild degenerative changes" as not supportive of Dr. MacDonald's conclusions.[116]  Dr. MacDonald's opinion was inconsistent not only with his treatment notes, but with Plaintiff's testimony.   Dr.

---

[114]   See Tr. 28-30.

[115]   See Tr. 30.

[116]   See id.

MacDonald stated that Plaintiff could sit for only two hours in an eight-hour workday.[117]  This statement was not supported by any medical evidence in the record, nor was it consistent with Plaintiff's function report or her testimony at the hearing.[118] When asked by her attorney "If someone were to give you a job. . . and you did not have to stand and walk more than two hours in a day. . . would you be able to do something like that?" Plaintiff answered: "Probably. Yes."[119]

The ALJ indicated that the discrepancies found in Dr. MacDonald's notes regarding the doctor's conclusions and the frequency of visitation called into question whether Dr. MacDonald personally prepared the form.[120]  The ALJ noted that such form reports, absent supporting rationale, may be accorded little or no weight.[121]  The ALJ thus relied on substantial evidence of record and properly adhered to legal procedures in determining that less than controlling weight should be given to Dr. MacDonald's medical opinion.

**B.   Plaintiff's Credibility**

Plaintiff also argues that the ALJ erred by questioning

---

[117]   See Tr. 280.

[118]   See Tr. 52, 166.  Plaintiff indicated that her ability to sit was not affected by her condition.  See Tr. 166.

[119]   Tr. 52.

[120]   See Tr. 30.

[121]   See id.

Plaintiff's testimony at the hearing regarding the severity of her symptoms and their affect on her ability to work.

While an ALJ must consider a claimant's complaints of pain, she is permitted to examine the medical evidence to find that claimant's complaints are exaggerated or not credible. <u>Johnson v. Heckler</u>, 767 F.2d 180, 182 (5th Cir. 1985). Additionally, the Fifth Circuit has held that an ALJ was correct in considering a claimant's ability to perform household chores when evaluating the credibility of her complaints. <u>See Vaughn v. Shalala</u>, 58 F.3d 129, 131 (5th Cir. 1995). When an ALJ's opinion is supported by substantial evidence, the court must defer to the ALJ's assessment. <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1024 (5th Cir. 1990).

In this case, the ALJ properly recited Plaintiff's testimony and weighed it against both the objective medical evidence and Plaintiff's previous statements contained in her function report.[122] Specifically, the ALJ compared the Plaintiff's function report with her testimony at the hearing that she required crutches at all times. Her function report indicated that she did not have a prescription, while at the hearing, Plaintiff testified that her crutches were prescribed.

The ALJ focused on contradictions in Plaintiff's testimony with recorded statements in her function report and the fact that she collected unemployment benefits while claiming to be disabled

---

[122]    <u>See</u> Tr. 26-27.

to find her statements not entirely credible.  However, the ALJ did not discount Plaintiff's testimony regarding the severity of her condition, and found her more limited than either consulting physician assessed.  Because the ALJ determined Plaintiff's testimony was not credible only where it was not consistent with Plaintiff's previous statements and the objective record, the ALJ did not err as a matter of law in assessing Plaintiff's credibility.

For the reasons stated above, the court finds that Defendant satisfied his burden.  As a result, the ALJ's decision finding Plaintiff not disabled is supported by substantial record evidence.  The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making his determination.  Therefore, the court **GRANTS** Defendant's motion for summary judgment.

## IV.  Conclusion

Based on the foregoing, the court **DENIES** Plaintiff's motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

**SIGNED** in Houston, Texas, this 27th day of August, 2014.

_____

U.S. MAGISTRATE JUDGE

23